IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

```
SANDRA ROBLES,                        )
                                      )
        Plaintiff,                    )
                                      )
             v.                       )   No.
                                      )
COUNTY OF MILWAUKEE, RICHARD R.       )
SCHMIDT, in his Official Capacity     )
                                      )
                                      )   JURY TRIAL DEMANDED
        Defendants.                   )
```

## COMPLAINT

Plaintiff SANDRA ROBLES, by and through her attorneys, Loevy & Loevy, complaining of Defendants, COUNTY OF MILWAUKEE, RICHARD R. SCHMIDT, states as follows:

### Introduction

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

**Parties**

4. Plaintiff, Sandra Robles, is a 25-year old mother of two young children. She is currently employed full-time and is studying to become a paralegal.

5. From approximately mid-January 2014 through mid-March 2014, Plaintiff was incarcerated at Milwaukee County Jail.

6. During her incarceration, Plaintiff was in the third trimester of her pregnancy. She was hospitalized for labor and the delivery of her daughter during her incarceration.

7. Defendant Richard R. Schmidt is the Acting Sheriff of Milwaukee County. In that capacity he is in charge of the Milwaukee County Jail ("MCJ"). By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the MCJ comply with federal and state requirements for the treatment of detainees. He has had personal knowledge that the shackling practices challenged in this case were occurring at the jail. He is sued in his official capacity.

8. The County of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

**Facts**

9. Plaintiff was forced to receive pre-natal care, endure labor, and give birth while shackled in accordance with the MCJ's

2

policy, custom, and/or widespread practice of shackling all detainees during medical treatment. Armed deputies were present for the entirety of Plaintiff Robles's hospitalization for childbirth.

10. On February 24, 2014, Plaintiff was brought — in shackles — to a prenatal appointment with her doctor. Because of the stress she was under, Plaintiff was admitted to the hospital so that labor could be induced.

11. For the duration of her multi-day hospitalization for the birth of her daughter, Plaintiff was handcuffed to the hospital bed by one arm and her legs were attached to each other by leg-irons. The leg-irons remained on Plaintiff even when she left the hospital bed to go to the bathroom.

12. Plaintiff's leg-irons were attached by a short chain that significantly and dangerously restricted her mobility during childbirth. While wearing the leg-irons, Plaintiff could spread her legs only about the width of her shoulders.

13. Because of the restrictiveness of the leg-irons, Plaintiff's medical providers questioned how she could give birth under such circumstances and requested the shackling be removed. The deputies refused, stating it was MCJ policy.

14. As a result of the leg-irons, Plaintiff could not put her feet into the "stirrups" on the hospital bed designed to assist women to push more effectively during labor.

3

15. The handcuffing of Plaintiff's wrist to the bed restricted her ability to grasp anything but the bed railing while in labor. The handcuffs cut into Plaintiff's wrist as she strained to give birth to her daughter.

16. After her baby was born, Plaintiff's mobility remained restricted by the shackles. For example, Plaintiff was encouraged by medical staff to walk around after giving birth to reduce the risk of blood clots, but the shackling prevented her from doing so.

17. Plaintiff's ability to hold her child "skin to skin" was obstructed by the shackles. The shackling and its consequences caused emotional and physical pain and suffering, discomfort, left marks on Plaintiff's body, and exposed her and her daughter to unreasonable risks of harm.

18. The Jail's blanket shackling policy, and its shackling of Plaintiff, were not rationally related to a legitimate, non-punitive purpose. Alternatively, the shackling practice was excessive in relation to any legitimate purpose it allegedly serves

19. The policy included no provisions for individualized evaluations of each pregnant inmate. Rather, it ensured that correctional officers shackle all pregnant women (and in fact all hospitalized inmates), without regard to their criminal history or medical history.

20. Plaintiff's shackling during prenatal care, labor, and delivery pursuant to the jail's blanket shackling policy constituted impermissible punishment in violation of her Fourteenth Amendment rights and exposed her to unreasonable risks of harm.

21. Belly chains and leg-irons can impact the mother's balance and increase the risk of falls thereby endangering the life and health of the child. Cuffing a woman's hands may prevent the breaking of a fall and impede a woman's ability to protect her stomach. Preventing walking during the first stage of labor may deny the woman the benefits of labor acceleration and discomfort alleviation. Preventing walking during the postpartum phase may enhance the risk of deep vein thrombosis and its life-threatening embolic complications.

22. Complete freedom of motion is absolutely required during delivery because various pelvic and lower extremity manipulations may be employed to facilitate delivery, especially in difficult cases (e.g., "Shoulder Dystocia").

23. The American Correctional Association, the American Bar Association, the American Public Health Association, the American College of Obstetricians and Gynecologists, the American College of Nurse Midwives, and the World Health Organization have all opposed use of perinatal restraints.

24. In October 2007, the U.S. Marshals Service revised its

restraint policies, all but eliminating the shackling of pregnant federal pretrial detainees and inmates, unless deemed necessary by compelling security considerations. The policy stated that "restraints should not be used when compelling medical reasons dictate, including when a pregnant prisoner is in labor, is delivering her baby, or is in immediate post-delivery recuperation." Special emphasis was placed on the use of the least restrictive constraints "to ensure safety and security."

25. Shortly thereafter, the Federal Bureau of Prisons, home to 14,000 federal female inmates, amended its policy to bar the shackling of pregnant inmates in labor, delivery, or post-delivery recuperation "unless there are reasonable grounds to believe the inmate presents an immediate, serious threat of hurting herself, staff or others, or there are reasonable grounds to believe the inmate presents an immediate and credible risk of escape that cannot be reasonably contained through other methods." The policy also indicated that if an inmate is restrained while in labor (or while delivering her baby), the restraints must be "the least restrictive restraints necessary to still ensure safety and security."

26. More recently, Immigration Customs Enforcement has adopted some of the same principles in its operations manual of performance-based national detention standards.

## Count I - 42 U.S.C. § 1983
## Due Process – 14th Amendment

27.  Each paragraph of this Complaint is incorporated herein.

28.  Defendants County and Acting Sheriff Schmidt, in his official capacity, violated the liberty interest in bodily integrity of Plaintiff through the shackling policy. Likewise, the County and Sheriff Schmidt exposed Plaintiff to unreasonable risks of harm through the shackling policy.

29.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff, and was objectively unreasonable.

30.  The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, the County of Milwaukee, is liable for their actions.

31.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Milwaukee County Jail in the manner described more fully above.

32.  As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish, as well as physical pain and suffering, and exposure to unreasonable risks of harm.

## Count II – Indemnification

33. Each of the foregoing paragraphs is incorporated as if fully stated herein.

34. Wisconsin law, Wisc. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

35. Defendant Schmidt, sued in his official capacity, is currently the Acting Sheriff of Milwaukee County, an employee of the County of Milwaukee. The person who held the position of Sheriff in 2014 acted within the scope of his employment in committing the misconduct described herein. Defendant Schmidt is the appropriate named defendant in this official capacity suit.

WHEREFORE, Plaintiff SANDY ROBLES respectfully requests that this Court enter judgment in her favor and against Defendants, COUNTY OF MILWAUKEE and RICHARD R. SCHMIDT, awarding compensatory damages and attorneys' fees, as well as any other relief this Court deems just and appropriate.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**JURY DEMAND**

Plaintiff, SANDY ROBLES, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

```
                                RESPECTFULLY SUBMITTED,

                                /s/ Theresa Kleinhaus
                                Attorneys for Plaintiff
```

Michael Kanovitz
Scott Rauscher
Theresa Kleinhaus
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900